[No. 42985.    En Banc.    May 23, 1974.]

KENNETH BAUMGARDNER, *Individually and as Administrator,
Appellant,* v. AMERICAN MOTORS CORPORATION *et al.,
Respondents.*

*Daniel F. Sullivan & Associates, Daniel F. Sullivan, Peters & Tracy,* and *R. L. Peters,* for appellant.

*Harold E. Winther* (of *Combs & Small*), for respondents.

BRACHTENBACH, J.—Here we meet for the first time the question of whether the manufacturer of an automobile involved in a collision is liable for injuries caused or enhanced because of a defect in design or manufacture, even though the defect did not cause or contribute to the collision itself. The issue has been characterized as that of the "enhanced injury" or "second accident".

Plaintiff husband, individually and in his representative capacity for his deceased wife's estate, sued the defendant manufacturer, American Motors Corporation, and also the owner and the driver of the car which collided with plaintiff's vehicle. It was alleged that the individual defendants' car neligently collided with plaintiff's automobile. Plaintiff husband was driving, without a seatbelt, while his wife was seated in the front passenger side, wearing a seatbelt but not a shoulder harness. Plaintiff alleges that at the time of the collision the front seat, due to a defect, broke loose and was propelled forward. At the same time the seatbelt remained firmly attached to the floor, thereby crushing the wife between the belt and the seat. An additional defect is claimed in that after the collision the seatbelt buckle would not release, thereby continuing the pressure on the wife's abdomen until the belt could be cut some minutes later. Plaintiff alleges that his wife's injuries and death were

either caused or enhanced by these defects. Plaintiff husband also sought damages for his own personal injuries.

The trial court granted defendant manufacturer's motion for summary judgment as to plaintiff's theories of strict liability, implied and express warranties, res ipsa loquitur, gross negligence, willful and wanton misconduct and outrageous conduct. Apparently in order to have the underlying issue resolved on appeal, plaintiff declined to proceed on his remaining theory of negligence which the trial court was willing to leave in the case.

The trial court, during three hearings, gave counsel ample opportunity to present a suitable and clear order. Unfortunately some confusion in the record persists. The summary judgment order dismisses American Motors with prejudice, but grants it an offset for any amounts recovered from the individual defendants as against any judgment recovered against American Motors. It is not clear what American Motors' attorney was trying to accomplish in the order which he prepared because obviously the issue of offset was moot when American Motors was dismissed. The plaintiff assigns error to the dismissal of his negligence claim with prejudice. The procedural process by which that issue was dismissed is not clear. However, we shall deal with these and other procedural problems in our order of disposition.

The facts alleged by plaintiff create a typical case of enhanced injury in that the asserted defects in the seat and the seatbelt buckle in no manner caused or contributed to the original collision, but are contended to have enhanced the injuries received by the occupants.

Similar litigation in other jurisdictions has led to a clear division of rationale and result. Various reasons are advanced as the basis for the decisions which deny recovery for such enhanced injury. We will evaluate these arguments in more detail, but they may be summarized as follows: (1) a manufacturer has no duty to produce an accident-proof or foolproof product; (2) a manufacturer is not an insurer of the safety of the users of his product; (3)

a manufacturer need not incorporate every safety device and design in his product; (4) a manufacturer only owes a duty to make his product safe for its intended use and the intended use of an automobile does not include collision with other vehicles; and (5) imposition of design standards is a legislative, not a judicial function.

The leading case rejecting recovery is *Evans v. General Motors Corp.*, 359 F.2d 822 (7th Cir. 1966), *cert. denied,* 385 U.S. 836 (1966). It relied on all points summarized above except No. 4. The dissent in *Evans* found these reasons unpersuasive and concluded simply that

> General Motors' duty was to use such care in designing its automobiles that reasonable protection is given purchasers against death and injury from accidents which are expected and foreseeable yet unavoidable by the purchaser despite careful use.

*Evans v. General Motors Corp., supra* at 827.

The *Evans* case has been criticized extensively. Nader and Page, *Automobile Design and the Judicial Process,* 55 Cal. L. Rev. 645 (1967) and articles cited therein at page 647 n.69. Nonetheless, *Evans* has been followed in a number of cases including: *Willis v. Chrysler Corp.,* 264 F. Supp. 1010 (S.D. Tex. 1967); *Shumard v. General Motors Corp.,* 270 F. Supp. 311 (S.D. Ohio 1967); *Schemel v. General Motors Corp.,* 384 F.2d 802 (7th Cir. 1967), *cert. denied,* 390 U.S. 945 (1968); *Walton v. Chrysler Motor Corp.,* 229 So. 2d 568 (Miss. 1969); *McClung v. Ford Motor Co.,* 333 F. Supp. 17 (S.D. W.Va. 1971), *aff'd per curiam,* 472 F.2d 240 (4th Cir. 1973), *cert. denied,* 412 U.S. 940 (1973); *Burkhard v. Short,* 28 Ohio App. 2d 141, 275 N.E.2d 632 (1971).

At the same time an opposite set of theories was developing, led by *Larsen v. General Motors Corp.,* 391 F.2d 495 (8th Cir. 1968). That court persuasively reasoned:

> Automobiles are made for use on the roads and highways in transporting persons and cargo to and from various points. This intended use cannot be carried out without encountering in varying degrees the statistically proved hazard of injury-producing impacts of various types. The

manufacturer should not be heard to say that it does not intend its product to be involved in any accident when it can easily foresee and when it knows that the probability over the life of its product is high, that it will be involved in some type of injury-producing accident . . .

. . . Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually caused by the so-called "second collision" of the passenger with the interior part of the automobile all are foreseeable.

*Larsen v. General Motors Corp., supra* at 501-02.

*Larsen*'s progeny is numerous. In *Dyson v. General Motors Corp.,* 298 F. Supp. 1064, 1072 (E.D. Pa. 1969), the court held:

The correct rule, in my opinion, can be stated either of two ways: (1) vehicular accidents are so commonplace as to constitute a readily foreseeable misuse of motor vehicles; or (2) vehicular accidents are incidental to the normal and intended use of motor vehicles on today's highways.

The court in *Mickle v. Blackmon,* 252 S.C. 202, 230, 166 S.E.2d 173 (1969), stated:

[A]n automobile manufacturer knows with certainty that many users of his product will be involved in collisions, and that the incidence and extent of injury to them will frequently be determined by the placement, design and construction of such interior components as shafts, levers, knobs, handles and others. By ordinary negligence standards, a known risk of harm raises a duty of commensurate care.

Finally, in *Grundmanis v. British Motor Corp.*, 308 F. Supp. 303, 306 (E.D. Wis. 1970), the court observed:

> To adopt the position of the majority in *Evans*, supra [*Evans v. General Motors Corp.*, 359 F.2d 822 (7th Cir. (1966)], would be to ignore reality, for the foreseeability of accidents is a matter of public and common knowledge. Thus, the manufacturer must accept the duty of protecting the user from unreasonable risk of injury due to negligence in design.

(Footnote omitted.) *See Passwaters v. General Motors Corp.*, 454 F.2d 1270 (8th Cir. 1972); *Friend v. General Motors Corp.*, 118 Ga. App. 763, 165 S.E.2d 734 (1968); *Brandenburger v. Toyota Motor Sales, U.S.A., Inc.*, ———— Mont. ————, 513 P.2d 268 (1973); *Engberg v. Ford Motor Co.*, ———— S.D. ————, 205 N.W.2d 104 (1973); *Ellithorpe v. Ford Motor Co.*, ———— Tenn. ————, 503 S.W.2d 516 (1973); *Horn v. General Motors Corp.*, 34 Cal. App. 3d 773, 110 Cal. Rptr. 410 (1973).

█ In summary, we agree with the conclusion of the New York Court of Appeals in *Bolm v. Triumph Corp.*, 33 N.Y.2d 151, 350 N.Y.S.2d 644, 650 (1973):

> Neither sound policy nor reason can be found to justify a distinction between the liability of the manufacturer whose defective item causes the initial accident and that of the manufacturer whose defective product aggravates or enhances the injuries after an intervening impact.

We find the rationale of the *Evans* line of cases to be faulty to the point of being specious. The reasons advanced do not get to the core of the problem. Examining the first three premises summarized above, we find that recovery is denied because a manufacturer is not expected to produce an accident-free product, it is not an insurer of the users of its product and it need not adopt every possible safety device. These conclusions are all true and reflect correct legal principles, but the assertion of such simplistic truisms is of little analytical aid.

The pertinent question is what duty, if any, does the manufacturer owe to the users of its product under these

circumstances. The answer is to be sought in two lines of theory, negligence and strict liability. From this perspective we properly evaluate the remaining *Evans* theories of "intended use" and "exclusive legislative function".

■ The intended use approach proceeds on the basic premise that a manufacturer owes a duty only to produce a product safe for its intended use. Since collisions are not within the intended use, the theory concludes that there is no duty, and therefore no liability. This is circular reasoning based on a faulty foundation. The real target is determination of the scope of the manufacturer's duty or as Prosser puts it: "whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." W. Prosser, *Torts* § 53, at 325 (4th ed. 1971). The intended use concept is merely a different characterization of the requirement that there be a reasonable foreseeable risk in determining whether conduct was negligent. W. Prosser, *Torts* § 43, at 250 (4th ed. 1971). Viewed from that perspective, we have no difficulty in holding that it is reasonably foreseeable, indeed it is statistically inevitable, that automobiles will be involved in collisions. That the manufacturer did not intend such does not detract from the validity of the conclusion that it was reasonably foreseeable. Prosser agrees with this view:

> The greater number of decisions [probably no longer true] have denied any duty to protect against the consequences of collisions, on the rather specious ground that collision is not the intended use of the car, but is an abnormal use which relieves the maker of responsibility. It is, however, clearly a foreseeable danger arising out of the intended use; and it cannot be expected that this reasoning will continue to hold.

(Footnotes omitted.) W. Prosser, *Torts* § 96, at 646 (4th ed. 1971).

■ Finally, we reject the manufacturer's argument, adopted in some of the *Evans* result cases, that the court cannot impose such a standard of conduct upon a manufacturer, but must defer to legislative action. American

Motors here characterizes such effort as an incredible proposal in the nature of a speculative frolic. This overlooks the elementary concept that determination of the existence or nonexistence of a duty is always the function of the court. W. Prosser, *Torts* § 37, at 206 (4th ed. 1971). Further, it ignores the history of the evolution of the common law as a flexible instrument, constantly shaping and molding itself to changing social and technical conditions. We strongly disavow the notion that the judicial system is incapable of dealing with a technical issue simply because it may involve testimony from expert witnesses. That is a common experience which judges and juries deal with daily. The strength of the system is that it has absorbed, accommodated and resolved disputes of immense complexity and novelty. Indeed, this very case involves nothing more complex than an allegedly defective seat locking mechanism and an allegedly defective seatbelt buckle.

■ In summary on the negligence theory, we hold a manufacturer can be held liable in negligence for design or manufacture defects which proximately cause enhanced injuries due to such defects. Of course, the plaintiff has the usual burdens of proof as in any negligence action including proof of the nature and extent of the injuries proximately caused or enhanced by the defect.

■ We next turn to the theory of strict liability as set forth in Restatement (Second) of Torts § 402A (1965)[1] and

[1]"§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

applied by this court to manufacturers in *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969). In those jurisdictions which have adopted this theory of strict liability, it has been applied to enhanced injury cases: *Badorek v. General Motors Corp.*, 90 Cal. Rptr. 305, 320 (Ct. App. 1970); *Dyson v. General Motors Corp., supra; Passwaters v. General Motors Corp., supra; Brandenburger v. Toyota Motor Sales, U.S.A., Inc., supra;* and *Ellithorpe v. Ford Motor Co., supra.* There is no reason why the theory should not be applied in these enhanced injury cases if a plaintiff can prove the necessary elements set forth in *Ulmer.*

Defendant, however, points to the following language in the comments to section 402A:

> The seller is not liable when he delivers the product in a safe condition and subsequent mishandling or other causes make it harmful by the time it is consumed . . . [comment *g.*]
>
> . . . .
> . . . If the injury results from abnormal handling . . . the seller is not liable. [comment *h.*]

These are simply matters of proof. The defendant's argument here is essentially the same as its argument about intended use and duty under the negligence approach. "Normal use" under section 402A, it contends, does not include involvement in collisions, but to so hold would be to deny experience. In normal use automobiles collide with automobiles.

■ Plaintiff has not briefed or argued the dismissal of his theories of liability other than negligence and strict liability. Defendant manufacturer has not briefed or argued the striking of three of its affirmative defenses. Assignments of error not argued will not be considered. *State v. Reader's Digest Ass'n*, 81 Wn.2d 259, 501 P.2d 290 (1972).

■ One other matter remains. Plaintiff settled with the individual defendant, the owner and driver of the other car. A covenant not to sue was executed. Defendant manufacturer moved to dismiss or alternatively for an offset of

the settlement amount against any judgment plaintiff might recover against it. Defendant contended that the covenant not to sue was operative as a release because it was given for a reasonably compensatory consideration within the holding of *Hargreaves v. American Flyers Airline Corp.*, 6 Wn. App. 508, 494 P.2d 229 (1972). The trial court correctly denied the motion for dismissal since it had no evidence before it as to whether the amount paid was reasonably compensatory. That holding is dictated by the perfectly clear language of Judge Farris in *Hargreaves* that such determination is a factual one.

■ However, the trial court granted the alternative motion for offset. This was error. Until all evidence is before the trial court, it is premature to determine who is responsible for what. The court's order of offset erroneously presupposes that all of the injuries were caused by the wrongful acts of both the individual defendant and defendant manufacturer.

Thus the posture of the matter is that the order striking the three affirmative defenses is affirmed, denial of the motion to dismiss on the ground of the covenant not to sue is affirmed, the order of offset is reversed, and the order dismissing the claims of negligence and strict liability against American Motors is reversed. The matter is remanded for trial.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and UTTER, JJ., concur.

Petition for rehearing denied July 18, 1974.