[No. 741-3.    Division Three.    August 12, 1974.]

SEATTLE-FIRST NATIONAL BANK, as *Administrator, Appellant,* v. VOLKSWAGEN OF AMERICA, INC., *Respondent.*

*Charles T. Schillberg* and *Ken Earl,* for appellant.

*A. R. Hart* (of *Wolf, Hackett, Beecher & Hart*), for respondent.

McINTURFF, J.—The trial court granted a summary judgment to defendant Volkswagen of America, Inc., and Leaf's

Auto-Motive Service. This appeal concerns only Volkswagen of America, Inc. (hereafter defendant).

In 1969 William R. Oaklund was the driver and his wife Susan was a passenger, when their 1958 Volkswagen microbus collided with the stern of a Ford flatbed truck which was proceeding ahead of them in the same direction. The Oaklunds were killed and their four children survived.

Plaintiff sued Volkswagen of America, the sole importer of Volkswagens to the United States, and Leaf's Auto-Motive Service, the dealer from which the Volkswagen microbus had been purchased, on a theory of strict product liability in tort, claiming defective design of the microbus enhanced the injuries received in the accident.

Plaintiff filed an affidavit of an expert witness, which in substance alleged that the relative speed of the Volkswagen in relation to the truck at the time of the collision was 20 m.p.h. or less; that serious injury would result to front-seat passengers of this vehicle if the vehicle were to strike a relatively solid object at a speed of approximately 10 m.p.h.; that an individual would not be able to ascertain the lack of structural integrity forward of the passengers in this particular vehicle; that the front of the vehicle has no reinforcing members, leaving passengers to be a shock absorber between the vehicle or object entering the passengers' compartment and the well-anchored seat. Volkswagen and Leaf's Auto-Motive moved for summary judgments.

In granting summary judgment the trial court stated that Washington did not recognize the nonmanufacturer-seller's liability for a defect in a product; and additionally, that no defect in design of the vehicle existed which was latent; that the deaths were due to the manner in which the vehicle was driven, rather than to a defect in the design of the vehicle. Since the trial court found no defect in design of the vehicle, no decision concerning enhanced injuries was made.

NONMANUFACTURER-SELLER'S STRICT LIABILITY

Is a seller, not the manufacturer, of a defective product,

liable in Washington under a theory of strict liability in tort? This question has not specifically been answered in this jurisdiction.

In *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969), the court accepted the theory of strict liability set forth in Restatement (Second) of Torts § 402 A (1965),[1] with respect to the manufacturer. However, the court in *Ulmer* specifically stated the issue of the liability of the nonmanufacturer seller under strict liability was not before the court, and therefore that issue was not reached.

*Berg v. Stromme*, 79 Wn.2d 184, 195, 484 P.2d 380 (1971), although founded upon a theory of implied warranty, supports the extension of strict liability under section 402 A to nonmanufacturer sellers:

> In *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969), this court adopted the rule of strict liability against the manufacturer—not the dealer—in accordance with the modern views declared in Restatement (Second) of Torts § 402 A (1965); Annot., 13 A.L.R.3d 1057, 1096. See W. Prosser, *The Fall of the Citadel*, 50 Minn. L. Rev. 791 (1966). Strict liability—liability without proof of negligence—in torts has been applied to the retail dealer despite disclaimers of warranty with greater and impressive frequency. *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960); *Appleman v. Fabert Motors, Inc.*, 30 Ill. App. 2d 424, 174 N.E.2d 892 (1961); *Vandermark v. Ford Motor Co.*, 61

---

[1] Section 402 A is as follows: "Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Cal. 2d 256, 391 P.2d 168 (1964); *Clary v. Fifth Ave. Chrysler Center, Inc.,* 454 P.2d 244 (Alaska 1969); *Walsh v. Ford Motor Co.,* 59 Misc. 2d 241, 298 N.Y.S.2d 538 (1969); *Schenfeld v. Norton Co.,* 391 F.2d 420 (10th Cir., 1968).

In *Jackson v. Standard Oil Co.,* 8 Wn. App. 83, 101 n.8, 505 P.2d 139 (1972), the court recognized the significance of the above-quoted portion of *Berg v. Stromme, supra,* as:

We note that *Vandermark v. Ford Motor Co.,* 61 Cal. 2d 256, 391 P.2d 168, 37 Cal. Rptr. 896 (1964) was cited with approval in *Berg v. Stromme,* 79 Wn.2d 184, 484 P.2d 380 (1971) for the proposition strict liability extends to retail dealers.

Numerous arguments are made in favor of strict liability of sellers for injury or damages from the sale of a defective product. The reasoning underlying these cases is best stated in *Vandermark v. Ford Motor Co.,* 61 Cal. 2d 256, 262, 391 P.2d 168, 171-72, 37 Cal. Rptr. 896 (1964):

Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products. (See *Greenman v. Yuba Power Products, Inc.,* 59 Cal. 2d 57, 63, [27 Cal.Rptr. 697, 377 P.2d 897].) In some cases the retailer may be the only member of that enterprise reasonably available to the injured plaintiff. In other cases the retailer himself may play a substantial part in insuring that the product is safe or may be in a position to exert pressure on the manufacturer to that end; the retailer's strict liability thus serves as an added incentive to safety. Strict liability on the manufacturer and retailer alike affords maximum protection to the injured plaintiff and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of their continuing business relationship. Accordingly, as a retailer engaged in the business of distributing goods to the public, Maywood Bell is strictly liable in tort for personal injuries caused by defects in cars sold by it. (See *Greenberg v. Lorenz,* 9 N.Y.2d 195, 200 [213 N.Y.S.2d 39, 173 N.E.2d 773]; *McBurnette v. Playground Equipment Corp.*

(Fla.) .137 So.2d 563, 566-567; *Graham* v. *Butterfield's Inc.*, 176 Kan. 68 [269 P.2d 413, 418]; *Henningsen* v. *Bloomfield Motors, Inc.*, 32 N.J. 358, 406 [161 A.2d 69, 75 A.L.R. 2d 1]; *State Farm Mut. Auto. Ins. Co.* v. *Anderson-Weber, Inc.*, 252 Iowa 1289 [110 N.W.2d 449, 455-456]; Rest.2d Torts (Tent. Draft No. 7), § 402 A, com. *f.*)

Dean William L. Prosser, concerning the liability .of wholesalers and retailers for strict products liability in tort states, in W. Prosser, *Law of Torts* § 100, at 664-65 (4th ed. 1971):

There is no dispute that the strict liability applies to the manufacturer of the product, including the maker of a component part, and an assembler of parts, as well as one who vouches for manufacturer by another by selling the product as his own. Except in a state or two, there is now general agreement that it applies to a wholesale dealer, and to one at retail. All of the valid arguments supporting the strict liability would appear to have no less force in the case of the dealers; and there are enough cases·in which the manufacturer is beyond the jurisdiction, or even unknown to the injured plaintiff, to justify giving the consumer the maximum of protection, and requiring the dealer to argue out with the manufacturer any questions as to their respective liability. Particularly today, when the large wholesale supply house, or even the retail chain, is actually the prime mover in marketing the goods, and the manufacturer is only a small concern which feeds it, it is unrealistic to draw any distinction between different kinds of sellers.

(Footnotes omitted.)

■ The reasons for the adoption of strict liability in tort against the wholesalers and retailers for personal injury or property damage from the sale of a defective product are persuasive in the instant action. Defendant, the single importer of Volkswagen automobiles into the United States, is a significant part of the marketing enterprise of Volkswagen automobiles in this nation. Defendant is in a position to adjust the costs of such liability with the foreign manufacturer—such is not the case with plaintiff or other consumers. The jurisdictional problems associated with a foreign manufacturer are strikingly apparent in the present

action. Thus, the consumers' only realistic protection is against the seller, wholesaler or retailer.

We therefore hold sellers, wholesale or retail, like manufacturers, are strictly liable for injuries or damages resulting from a defective product.

### ENHANCEMENT OF INJURIES

■ Does a right of action exist in Washington for injuries received from a product-design defect, not the proximate cause of the accident, but which enhanced the injuries received? This question has been answered in the affirmative in *Baumgardner v. American Motors Corp.*, 83 Wn.2d 751, 522 P.2d 829 (1974).

■ Following this decision defendant filed an additional memorandum, attempting to distinguish *Baumgardner* from the present case and arguing that we should reject liability as a matter of law. It is urged that in *Baumgardner* the defective seat, which came loose, and the defective seat belt, which would not release, were latent defects, as opposed to this case, where a partial reason for the injuries was that the seat failed to break loose upon impact. We disagree, not because of stability of the seats, but because of the affidavit of the expert witness, that an individual would not be able to ascertain the lack of structural integrity forward of the front seat, and that there were no reinforcing corner posts at the front of the vehicle. This is sufficient to present a factual question as to whether there was a design defect and, if so, was it latent or patent.

■ It is next urged that, to reverse, the trial court would have to require a redesign of the front of the Volkswagen microbus, and the production of a crash-proof vehicle. We disagree. We have seen no case holding that vehicles must be designed to be crashworthy or crashproof. The application of general negligence principles does not require this of manufacturers. The manufacturer's only duty is to use reasonable care in the design of its products so the consumer or user is not subjected to an unreasonable risk of injury or enhancement of injury. *Baumgardner v. American Motors Corp., supra; Larsen v. General Motors Corp.,*

391 F.2d 495 (8th Cir. 1968); *Bolm v. Triumph Corp.*, 33 N.Y.2d 151, 350 N.Y.S.2d 644 (1973).

■ Defendant urges that *Dreisonstok v. Volkswagenwerk*, 489 F.2d 1066 (4th Cir. 1974), is applicable. A 1968 microbus collided with a utility pole at 40 m.p.h. The court held that the manufacturer was not under a duty to design a car which would withstand collisions "under any circumstances." The court further held, as a matter of law, that in 1968 the manufacturer did not have to design a vehicle which would "protect against such an 'unreasonable risk of injury.'" In the present case we do not have a speed of 40 m.p.h., but an alleged speed of 20 m.p.h. or less. Therefore, it is our decision that a material question of fact does exist, *i.e.*, whether the design of the vehicle subjected the users of the vehicle to an unreasonable risk of injury, or enhancement of injury.

Under *Baumgardner*, there exists not only a cause of action for defect-enhanced injuries on a negligence theory, but also a cause of action on the theory of strict liability under Restatement (Second) of Torts § 402 A (1965).

Accordingly, the judgment of the trial court granting summary judgment is reversed and the matter is remanded for trial. Costs shall abide the final outcome of the cause.

MUNSON, J., concurs.

GREEN, C.J. (dissenting)—I dissent. I do not believe that *Baumgardner v. American Motors Corp.*, 83 Wn.2d 751, 522 P.2d 829 (1974), should be extended to permit court supervision of the type of product design involved in the instant case. *See Bernal v. American Honda Motor Co.*, 11 Wn. App. 903, 527 P.2d 273 (1974); *Dreisonstok v. Volkswagenwerk*, 489 F.2d 1066 (4th Cir. 1974). Products are manufactured for sale to various income levels in the market. A Volkswagen's ability to protect its occupants in a collision will never equal that of a Cadillac, a Mercedes or other higher-priced cars because of the price differential. How can *ad hoc* jury or court decisions in individual cases adequately apprise a manufacturer of the specific standards

that must be met in product design? The general rules of negligence suggested by the instant case cannot do so. The effect of this case, if universally applied, will be to eliminate the less-expensive products from the market or drive up the price to cover losses such as those claimed in this case. In my judgment, regulation in this area is more properly reserved to the legislature.

Petition for rehearing denied October 23, 1974.

Appealed to Supreme Court October 28, 1974.