LOREN BERG, *Appellant*, v. GENERAL MOTORS CORPORATION, *Respondent*.

*Anthony Schwab*, for appellant.

*Perkins, Coie, Stone, Olsen & Williams, William A. Gould*, and *Steven C. Marshall*, for respondent.

SWANSON, J.—This appeal presents the primary question of whether the law of negligence permits recovery by a purchaser of goods against a remote manufacturer for damages constituting solely economic loss as distinguished from damage to person or property.

Loren Berg, a commercial fisherman, appeals from the trial court's dismissal of his complaint seeking to recover lost profits and certain other consequential damages allegedly arising from the failure of two fishing boat engines which were manufactured by the respondent Detroit Diesel Division of General Motors Corporation (hereinafter referred to as "Detroit Diesel"). Berg acquired the engines in question from Duncan Engine Company of Seattle (hereinafter referred to as "Duncan"), an authorized Detroit Diesel dealer which purchased the engines for resale pursuant to a contract with Emerson G.M. Diesel, Inc., a distributor for Detroit Diesel. The record indicates that the first engine, which was purchased by Berg from Duncan in 1970, broke down in July 1971, after approximately 609 hours of operation, whereupon it was rebuilt by Duncan without

notice to Detroit Diesel. The rebuilt engine failed in August 1971, after running about 40 hours, and Duncan then installed a new engine. A subsequent breakdown occurred when the clutch failed. The particular type of clutch involved, which had been recommended by Duncan, was not suitable for commercial fishing use in conjunction with the Detroit Diesel engines.

Berg brought suit against Detroit Diesel and Duncan, arguing as to Detroit Diesel that it is liable for the economic losses suffered by Berg on the theories of (1) negligent manufacture, and (2) vicarious liability based upon an agency relationship for the negligence of Duncan and for breach of an implied warranty of fitness for a particular use made by Duncan. It is undisputed that Detroit Diesel did not violate any express warranty it owed to Berg as the initial purchaser of a Detroit Diesel engine. Following discovery and submission to the trial court of affidavits and responses to interrogatories, Detroit Diesel moved for dismissal which the court regarded as a motion for summary judgment and granted. Berg's action against Duncan was continued pending the outcome of this appeal. CR 54(b).

On appeal, Berg argues first, that the trial court erred in failing to recognize a negligence cause of action brought solely for economic loss, and second, that the trial court erred in failing to find an agency relationship between Detroit Diesel and Duncan such that Detroit Diesel is liable for any negligence or breach of warranty by Duncan. In response to Berg's first argument, Detroit Diesel denies any negligence in the manufacture of its engines and contends, assuming arguendo that it was negligent, that the law of negligence permits recovery only for physical injury (personal injury or property loss) and not for economic or commercial loss (such as the loss of profits claimed by Berg).

We agree. The applicable rule is stated as follows in W. Prosser, *Torts* § 101 (4th ed. 1971) at 665:

[W]here there is no accident, and no physical damage,

and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule, to be encountered later, that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery.

(Footnotes omitted.) *See* 2 Restatement (Second) of Torts § 395 (1965). This rule has the effect of limiting recovery for economic losses to whatever remedies may be available in contract law. *See* J. White & R. Summers, *Uniform Commercial Code* § 11-5 (1972). The rationale for the rule was well stated in the context of a strict liability claim[1] as follows in *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18, 403 P.2d 145, 45 Cal. Rptr. 17, 23 (1965):

The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his

---

[1] Berg's brief includes argument that he should recover his loss of profits from Detroit Diesel on a strict liability theory, but the record indicates that issue is not properly before us because it was not presented to the trial court. In the context of this appeal, however, it is apparent that the rule barring tort recovery for economic loss is the same under either strict liability or negligence theory. *See Baumgardner v. American Motors Corp.*, 83 Wn.2d 751, 522 P.2d 829 (1974); *Berg v. Stromme*, 79 Wn.2d 184, 484 P.2d 380 (1971). *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969); *Seattle-First Nat'l Bank v. Volkswagen of America, Inc.*, 11 Wn. App. 929, 525 P.2d 286 (1974); 2 Restatement (Second) of Torts § 402A (1965).

economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone.

(Citations omitted.) As respondent points out, there is substantial authority rejecting claims based on negligence theory seeking recovery for economic loss against the remote manufacturer of a defective product. *See, e.g., Anthony v. Kelsey-Hayes Co.*, 25 Cal. App. 3d 442, 102 Cal. Rptr. 113 (1972); *Crowell Corp. v. Topkis Constr. Co.*, 280 A.2d 730 (Del. Super. Ct. 1971); *Inglis v. American Motors Corp.*, 3 Ohio St. 2d 132, 209 N.E.2d 583 (1965); *Trans World Airlines, Inc. v. Curtiss-Wright Corp.*, 1 Misc. 2d 477, 148 N.Y.S.2d 284 (1955). *But see A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 214 N.W.2d 764 (1974); *State ex rel. Western Seed Prod. Corp. v. Campbell*, 250 Ore. 262, 442 P.2d 215 (1968). *See generally* Annot., 16 A.L.R.3d 683 (1967); Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 929-31 (1966).

Moreover, although the distinction between economic and physical losses which determines the standard of recovery in negligence actions previously has not been recognized explicitly in Washington, such distinction is inherent in the recognized requisites for negligence theory recovery which are stated in terms of physical or bodily harm. 2 Restatement (Second) of Torts § 395 (1965); *see Dipangrazio v. Salamonsen*, 64 Wn.2d 720, 393 P.2d 936 (1964); *Palmer v. Massey-Ferguson, Inc.*, 3 Wn. App. 508, 476 P.2d 713 (1970). Further, in considering a strict liability claim, this court impliedly has recognized that recovery will be denied for loss that is "merely commercial or economic where the plaintiff does not allege indirect or consequential damage due to the failure of the product to match his economic expectations." *Bombardi v. Pochel's Appliance & TV Co.*, 9 Wn. App. 797, 806, 515 P.2d 540 (1973), *modified on other grounds*, 10 Wn. App. 243, 518 P.2d 202 (1973).

Berg relies primarily upon *Reefer Queen Co. v. Marine Constr. & Design Co.*, 73 Wn.2d 774, 440 P.2d 448 (1968).

Contrary to Berg's suggestion, *Reefer Queen* does not stand for the proposition that purely economic loss may be recovered against a remote manufacturer in a negligence action. There, no appeal was taken by the manufacturer from the trial court's ruling establishing its liability for the shipowner's lost profits; rather, such liability was assumed and the appeal centered on the questions of whether the shipowner could recover his crew's share of lost profits and whether the amount of such profits had been established properly and with sufficient certainty. Other Washington cases cited by Berg are also distinguishable.[2] We conclude that the trial court did not err in dismissing Berg's lawsuit

---

[2]*Arnesen v. Rowe*, 46 Wn.2d 718, 284 P.2d 329 (1955), did not involve a remote manufacturer and the primary issue was the sufficiency of the plaintiff's pleadings which suggested a contractual relationship between the parties. *Kadiak Fisheries Co. v. Murphy Diesel Co.*, 70 Wn.2d 153, 422 P.2d 496 (1967), *Freeman v. Navarre*, 47 Wn.2d 760, 289 P.2d 1015 (1955), and the early case of *Mazetti v. Armour & Co.*, 75 Wash. 622, 135 P. 633 (1913), were all decided prior to the adoption in the state of the Uniform Commercial Code, RCW 62A. *See State ex rel. Madden v. PUD 1*, 83 Wn.2d 219, 517 P.2d 585 (1973); *Baum v. Murray*, 23 Wn.2d 890, 162 P.2d 801 (1945). We express no opinion as to the possible effect of the Uniform Commercial Code upon the reasoning or results in these cases because they otherwise are distinguishable from the case at bar. In *Kadiak*, the court held that the plaintiff consumer was the third party beneficiary of a contract between the manufacturer and the retailer and that the contract contemplated the possibility of lost profits. *Freeman* also turned primarily on contractual principles inasmuch as the court concluded that there was a contractual relationship, based on agency principles, between the manufacturer and the ultimate consumer. The court's discussion of negligence theory speaks in terms of recovery for physical injury to the plaintiff or his property, not economic loss. *Mazetti* has been limited to cases involving physical injury caused by the manufacture of food unfit for human consumption. *Freeman v. Navarre, supra; Cochran v. McDonald*, 23 Wn.2d 348, 161 P.2d 305 (1945); *see Williamson v. Irwin*, 44 Wn.2d 373, 267 P.2d 702 (1954). Berg also cites *V.C. Edwards Contracting Co. v. Port of Tacoma*, 83 Wn.2d 7, 514 P.2d 1381 (1973); *Suryan v. Lake Washington Shipyards*, 163 Wash. 164, 300 P. 941 (1931); and *Lamphiear v. Skagit Corp.*, 6 Wn. App. 350, 493 P.2d 1018 (1972), all of which recognize that lost profits can be recovered on contract principles where such profits can be estimated with reasonable certainty.

to recover purely economic loss insofar as it was founded in negligence theory.

As we have noted earlier herein, Berg also asserts assignments of error presenting the contention that the trial court erred in failing to recognize an agency relationship in fact or in law between Detroit Diesel and Duncan. Berg argues that Detroit Diesel is vicariously liable to him for damages he suffered because of alleged negligence and breach of warranty by Duncan in connection with the sale and repair of Detroit Diesel engines. It would unduly lengthen this opinion to demonstrate what is readily apparent from the record in this case—that there is no merit to Berg's agency contentions. We therefore decline to do so. The controlling principles are adequately stated elsewhere. *See Lamb v. General Associates, Inc.,* 60 Wn.2d 623, 374 P.2d 677 (1962); *Baxter v. Morningside, Inc.,* 10 Wn. App. 893, 521 P.2d 946 (1974); *Deers, Inc. v. DeRuyter,* 9 Wn. App. 240, 511 P.2d 1379 (1973); *Jackson v. Standard Oil Co.,* 8 Wn. App. 83, 505 P.2d 139 (1972); *McLean v. St. Regis Paper Co.,* 6 Wn. App. 727, 496 P.2d 571 (1972). There was no error.

The judgment is affirmed.

WILLIAMS, C.J., and JAMES, J., concur.

Petition for rehearing denied July 16, 1975.

Review granted by Supreme Court September 23, 1975.