**Walter C. BULLINER, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. No. 632.**

United States District Court,
E. D. North Carolina,
Elizabeth City Division.

Dec. 7, 1971.

---

John H. Hall, Jr., Gerald F. White, White, Hall & Mullen, Elizabeth City, N. C., for plaintiff.

Dewey W. Wells, LeRoy, Wells, Shaw, Hornthal & Riley, Elizabeth City, N. C., for defendant.

## MEMORANDUM OPINION AND ORDER

DUPREE, District Judge.

In this action grounded on negligence and breach of warranty plaintiff seeks damages for personal injuries allegedly sustained when the left front wheel ran off a Chevrolet step-van truck he was driving causing it to wreck. The truck, manufactured by defendant, had been purchased ten months before by plaintiff's father from defendant's authorized dealer. The case is before the court on defendant's motion for summary judgment.

From the evidence submitted it appears that plaintiff was employed by his father as an itinerant purveyor of film, postcards and other sundries in the beach areas of northeastern North Carolina. The truck was used to transport and display the merchandise. It had been driven 15,350 miles at the time of the accident which occurred when plaintiff was returning from the beach at Nags Head to his home base in Elizabeth City. Describing the accident plaintiff testified in his deposition:

"Well, as I was coming over the Wright Brothers Bridge, Wright Memorial Bridge, I think it is, I heard a noise and I couldn't tell whether the noise was in the motor, in the rearend of the truck, or just where, but I did hear a grinding-clinkety noise or some kind of noise. Right after I got over the bridge—of course, I had started slowing down as I heard the noise, and right after I got over the bridge, there's a Gulf Service Station right there, owned by Francis Morse, and Francis is one of my customers and I pulled up and Francis come out the door, he came out the door, and I told him to 'Listen to this', and I didn't get out of the truck, I just opened my door, and I said, 'Do you hear this noise Francis?' And he listened, and I drove up a little bit and he said, 'Yes', and I said, 'Is it in the motor, in the wheels or just where is it?' He said, 'Oh, I don't know.' I said, 'Well, I'm worried about it, Francis, I've got to get home.' He said, 'Oh, you'll make it. Go ahead and go.' He said, 'I don't think nothing's really wrong with it,' and the noise would come and go. So I proceeded on down the highway and naturally I was aware that something was wrong, I mean for all I knew the motor might blow up on me. I really didn't know. I'm no mechanic and I don't know anything really about cars or trucks and I was real cautious of myself and I held both hands on the steering wheel. So all of a sudden the noise got real loud and when it did the left front wheel of my truck came completely off, the hub, the spindle, ever what you call it; there was just nothing there but a rod sticking out. I guess it's what you might call the axle

was sticking out and I tried to hold it on the highway and I couldn't. If it had been a car coming, I imagine we'd have collided and somebody would have really been hurt. I remember screaming, because it happened in just a split second and the truck ended up right on—it didn't turn over, but it was leaning right on the ditch."

Plaintiff also testified that frequently the roads in the beach areas would be covered with water and on at least one occasion he drove the truck through salt water. Following this the truck was taken to the dealer to be cleaned up, but apparently the wheel bearings were not cleaned or repacked.

Defendant offered the affidavits of three expert mechanics to the effect that the exposure of wheel bearings to salt water frequently results in rust and corrosion unless after such exposure the bearings are cleaned and lubricated; that the loss of the wheel in this case was due to the overheating, melting and disintegration of the wheel bearings which in turn was caused by the corrosive effect of salt water; and that the wheel assembly itself was properly designed, manufactured and assembled.

To counter this testimony plaintiff offered the affidavit of Dr. William Austin, a professor of metallurgical engineering at North Carolina State University, who gave his opinion that the loss of the wheel "was the result of mechanical failure not associated with, nor did it result from exposure to corrosive conditions prior to the accident". He also stated "that the only thing that keeps the wheel on is the outer wheel bearing" and that "if the truck is in operation and the outer wheel bearing comes apart, the wheel could come off". Based on these observations he gave as his opinion that the design of the wheel assembly is "unsafe".

Plaintiff also offered the affidavit of Dr. Carl Zorowski, a professor of mechanical engineering at North Carolina State University. While agreeing that the disintegration of the outer bearing set in motion the forces that led to the loss of the wheel, this witness advanced a somewhat different theory as to why the wheel came off after the malfunction of the bearing. Contrary to the statement of Dr. Austin, he said that the wheel is in fact secured to the spindle by a washer, a slotted nut and cotter key assembly, but a comparison of a "standard washer" which he purchased in October, 1971, with the outer race from a bearing that plaintiff "told me had been recently removed from the left front spindle of the truck in question" resulted in a finding that the outer diameter of this "standard washer" was $9/1000$th of an inch less than the maximum inner diameter of the bearing race. From this he concluded "that when the outer bearing failed and the rollers were destroyed the race rode up onto the washer and wore it away to the point where the washer slipped completely through the race permitting the wheel to come off".

A safe design in the opinion of Dr. Zorowski would require a washer with a diameter greater than the largest inside diameter of the bearing race. Unfortunately, the bearing race and washer actually in use on the wheel at the time of the accident apparently were not recovered, and this evidence of plaintiff's mechanical engineer would not be admissible over objection. It therefore cannot be considered on defendant's motion for summary judgment. Chan Wing Cheung v. Hamilton, 298 F.2d 459 (1st Cir. 1962).

In substance, then, the competent evidence before the court tends simply to show that following the disintegration of a wheel bearing the wheel came off the truck. Plaintiff's evidence contradicts that of defendant as to why the bearing disintegrated, but plaintiff has offered no evidence as to what caused this malfunction, much less that it was due to any negligence on the part of defendant.

As to plaintiff's claim of defective design the evidence offered is also considered insufficient to create a genuine issue of material fact. Dr. Austin's affidavit was based on his examination of a wheel hub which plaintiff identified to him "as being the hub connected with the left front wheel of the 1968 Chevrolet step-van involved in the accident in suit of March 19, 1969" and his "study of the left front wheel assembly, spindle and mechanical drawings relating to the same". From these observations he concluded that "the only thing that keeps the wheel on is the outer wheel bearing" and that in his opinion "this design is unsafe".

Aside from the competency of this evidence and the questionable qualification of a metallurgist to testify as an expert on a question of mechanical design, the court finds it necessary to reject this evidence for the reason that it clearly appears that either the parts examined by Dr. Austin were not the ones involved in this case or that he failed to observe the obvious. Plaintiff's photographic exhibits of the actual wheel and spindle assembly which appear in the record clearly show the slotted retaining nut referred to in Dr. Zorowski's affidavit, and the statement of Dr. Austin that "there are no 'lock' nuts, pins or other retaining devices to keep the wheel from coming off" is simply incredible.

■ Assuming that plaintiff could produce competent evidence of negligent design in the wheel retention assembly on this truck, the case would then bear some similarity to the well-known case of Larsen v. General Motors Corporation, 391 F.2d 495 (8th Cir. 1968), where the court held the manufacturer of an automobile to the duty of using due care in design to avoid subjecting the user to an unreasonable risk of injury or enhancement of injury in the event of a collision not caused by the negligent design. North Carolina law governs here, however, and the appellate courts of this state have not adopted the rationale of Larsen in negligence actions against the manufacturers of motor vehicles but have continued to require plaintiffs in such actions to establish a causal relationship between the alleged negligence and the accident. Coakley v. Ford Motor Company, 11 N.C.App. 636, 182 S.E.2d 260 (1971) (cert. denied, 279 N.C. 393, 183 S.E.2d 244). Accord, Frank v. Crescent Truck Company, 244 F.2d 101 (3rd Cir. 1957); Annot., 76 A.L.R.2d 91 at Page 115.

Moreover, while automobile accidents of the type involved in Larsen are commonplace, there was no evidence here of a prior case in which the wheel bearings on a similar vehicle had disintegrated resulting in a wreck. Yet the uncontradicted evidence of defendant's witnesses was to the effect that the wheel assembly of this Chevrolet truck was of the same design as used in all motor vehicles now being manufactured.

■ Since plaintiff has produced no evidence that defendant's negligence caused the outer wheel bearing to disintegrate and no competent evidence of negligent design proximately causing his injuries, he has failed to establish a genuine issue of material fact as to defendant's negligence and summary judgment on plaintiff's negligence theory must be granted. Harward v. General Motors Corporation, 235 N.C. 88, 68 S.E.2d 855 (1952); New Amsterdam Casualty Company v. Gray, 253 N.C. 60, 116 S.E.2d 146 (1960); Coakley v. Ford Motor Company, supra.

As a second theory of liability plaintiff alleges that defendant's breach of warranties caused his injuries. His evidence to support this theory is the same as that relied upon for his negligence claim with the addition of some statements made by the plaintiff in his affidavit relating to privity of contract; however, due to the nature of the warranties made by the defendant at the time of the sale of this truck it is unnecessary to decide whether plaintiff's evidence raises a question of privity of contract.

In its booklet entitled "1968 Chevrolet Truck Owner Protection Plan and New Vehicle Warranty" the defendant warranted the step-van truck in question to be "free from defects in material and workmanship under normal use and service . . . " Another provision disclaimed all other warranties, express and implied. This disclaimer meets the requirements of North Carolina General Statute § 25–2–316(2) relating to disclaimers of implied warranties since it is in writing, the implied warranty of merchantability is mentioned (the implied warranty of fitness is also mentioned), and the exclusion is conspicuous as defined in North Carolina General Statute § 25–1–201(10). Thus, the only warranty upon which plaintiff can rely is the express warranty that the truck was "free from defects in material and workmanship". As the plaintiff has produced no competent evidence to show a breach of this warranty the defendant's motion for summary judgment must also be granted on the breach of warranty count. Accordingly, it is

Ordered that defendant's motion for summary judgment is allowed and that this action be and is hereby dismissed. Let the plaintiff pay the costs.