Oscar Wayne SEALEY, Administrator of the Estate of Timothy Wayne Sealey, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

Henry T. DURDEN, Administrator of the Estate of Mitchell Durden, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

Winfred DURDEN, Administrator of the Estate of Winfred J. R. Durden, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

John Franklin CANADY, Administrator of the Estate of Michael Lynn Canady, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

John D. DEW, Administrator of the Estate of John Michael Dew, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

Nos. 76–0017–CIV–3 to 76–0021–CIV–3.

United States District Court, E. D. North Carolina, Fayetteville Division.

July 29, 1980.

---

Joe McLeod, Fayetteville, N.C., for plaintiffs.

Daniel W. Donahue, Winston–Salem, N.C., for defendant.

## MEMORANDUM OF DECISION

BRITT, District Judge.

The five plaintiff administrators instituted these actions to recover for the alleged wrongful deaths of their intestates resulting from an automobile collision in Robeson County, North Carolina, on 7 April 1974. By Order dated 13 November 1976, Judge Dupree, with consent of the parties, consolidated the actions for the purpose of discovery.

In their First Claim For Relief plaintiffs allege that the vehicle in which the five men were riding overturned as a result of the separation of the A–frame and spindle on the right front side of the vehicle.

Plaintiffs originally contended that this was a design defect, but they have since formally abandoned this contention.

Plaintiffs further allege in their First Claim that because of a design defect in the fuel tank, of which their intestates were not warned, the gasoline escaped from the tank when the vehicle overturned, ignited, and burned the passengers to death. (The vehicle came to rest on its top and the filler pipe to the fuel tank became disengaged.)

In a Second Claim For Relief plaintiffs allege breach of implied warranties of merchantability and of fitness for a particular purpose and, in a Third Claim For Relief, strict liability under the theory that the vehicle was a dangerous instrumentality.

Defendant moved in each case for Summary Judgment or, in the alternative, that the Second and Third Claims be stricken. These, along with other Motions, were referred by Judge Dupree to Magistrate Charles K. McCotter, Jr., who recommended that the Motions be granted as to the breach of warranty and strict liability claims and denied as to the negligence claim. Each of the parties has filed Objections to the Memorandum and Recommendations of the Magistrate. All parties have treated these cases as being consolidated for the purpose of the Motions, and the Court will do likewise.

By deposition plaintiffs' expert witnesses have testified that there was a defect in the design of the 1969 Mercury in which the decedents were passengers in two basic particulars:

(a) The filler neck through which fuel is put into the gas tank, in that it was too long and inflexible, thus making it susceptible to becoming disengaged in a collision; and,

(b) By having no fire wall to prevent gasoline from a ruptured tank in an upset collision from running into the passenger compartment and feeding a fire (the top of the fuel tank in this vehicle being the bottom of the luggage compartment).

This being a diversity claim, the substantive law is governed by the law of the State of North Carolina. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## I. BREACH OF WARRANTY CLAIM

Ford's warranty booklet, after setting forth the express warranty, provided: " * * * this warranty is expressly in lieu of any other express or implied warranty, condition, or guarantee on the vehicle or any part thereof, including any implied WARRANTY OF MERCHANTABILITY OR FITNESS, and of any other obligations on the part of Ford or the selling dealer." North Carolina has adopted the Uniform Commercial Code. Chapter 25, North Carolina General Statutes.

■ Defendant's disclaimer meets the requirements of North Carolina General Statute § 25–2–316(2), which provides: " * * * to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. * * * " *Bulliner v. General Motors Corp.*, 54 F.R.D. 479 (E.D.N.C.1971).

## II. STRICT LIABILITY CLAIM

■ North Carolina clearly has not adopted the theory of strict liability in tort. *Cockerham v. Ward*, 44 N.C.App. 615, 262 S.E.2d 651 (1980); *Fowler v. General Electric Co.*, 40 N.C.App. 301, 252 S.E.2d 862 (1979).

## III. NEGLIGENCE CLAIM

■ Resolution of the negligence claim is more difficult. All of the parties agree that the fact situation here presents a classic example of the so–called "Second–Impact" doctrine of negligence, originally expounded in *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968). The *Larsen* doctrine provides that an automobile manufacturer has a duty to design its vehicles so that they will reasonably protect the occupants from enhanced injuries in the event

of a collision. Since plaintiffs have abandoned their claims that a design defect caused the accident itself their right to recovery, if any, depends on their contention that the defectively designed fuel system caused or contributed to the injuries and deaths of their intestates.

■ The Appellate Courts of North Carolina have not ruled on this question. Therefore, Federal Courts are under a duty to *predict* what the Appellate Courts of North Carolina would do. *McClung v. Ford Motor Co.*, 472 F.2d 240 (4th Cir. 1973). This judicial guessing game in North Carolina has produced divergent points of view. Judge Jones in the Western District has clearly rejected the *Larsen* doctrine, *Alexander v. Seaboard Air Line Railroad*, 346 F.Supp. 320 (W.D.N.C.1971), as has Judge Ward in the Middle District, *Simpson v. Hurst Performance, Inc.*, 437 F.Supp. 445 (M.D.N.C.1977). Each of these cases follows *Evans v. General Motors Corp.*, 359 F.2d 822 (7th Cir. 1966), *cert. denied*, 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966), which holds in essence, that manufacturers are responsible only for defects in design which proximately cause the automobile accident itself. The reasoning behind the *Evans* rule is that the intended purpose of an automobile does not include its participation in collisions with other objects despite the manufacturer's ability to foresee the possibility that such collisions may occur. *Evans* was subsequently overruled by *Huff v. White Motor Corp.*, 565 F.2d 104 (7th Cir. 1977), on the ground that the state courts and the Legislature of the State of Indiana, whose substantive law applied in *Evans*, altered the law of Indiana after the *Evans* decision to such an extent that the Federal Court in Indiana was of the opinion that the Indiana Courts would now adopt the *Larsen* doctrine.

In the Eastern District there have been two cases in which the *Larsen* doctrine has been discussed. *Bulliner v. General Motors Corp.*, 54 F.R.D. 479 (E.D.N.C.1971) and *Isaacson v. Toyota Motor Sales*, 438 F.Supp. 1 (E.D.N.C.1976). It appears to this Court that the reference to *Larsen* in *Bulliner* was dictum.

The Appellate Courts of North Carolina have given no indication as to how they would rule. Judge Larkins in *Isaacson*, after stating "This Court has frankly found little guidance in the North Carolina decisions on the issue before it", went on to cite other cases of the North Carolina Supreme Court as being indicative of its "leaning in the area of products liability". Conceding that to be true, this Court does not feel that the cited cases give any guidance as to what the Supreme Court of North Carolina would do with the issue here presented. Courts of other jurisdictions are nearly unanimous in following the *Larsen* doctrine. *Huff v. White Motor Corp.*, 565 F.2d 104 (7th Cir. 1977) (applying Indiana law); *Knippen v. Ford Motor Co.*, 546 F.2d 993 (D.C.Cir. 1976) (applying District of Columbia law); *Polk v. Ford Motor Co.*, 529 F.2d 259 (8th Cir. 1976), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976) (applying Missouri law); *Wooten v. White Trucks*, 514 F.2d 634 (5th Cir. 1975) (applying Kentucky law); *Turcotte v. Ford Motor Co.*, 494 F.2d 173 (1st Cir. 1974) (applying Rhode Island law); *Dreisonstok v. Volkswagenwerk*, 489 F.2d 1066 (4th Cir. 1974) (applying Virginia law); *Nanda v. Ford Motor Co.*, 509 F.2d 213 (7th Cir. 1974) (applying Illinois law); *Perez v. Ford Motor Co.*, 497 F.2d 82 (5th Cir. 1974) (applying Louisiana law); *Passwaters v. General Motors Corp.*, 454 F.2d 1270 (8th Cir. 1972) (applying Iowa law); *Richman v. General Motors Corp.*, 437 F.2d 196 (1st Cir. 1971) (applying Massachusetts law); *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968) (applying Minnesota law); *Huddell v. Levin*, 395 F.Supp. 64 (D.N.J.1975); *Walker v. International Harvester Co.*, 294 F.Supp. 1095 (W.D.Okl.1969); *Dyson v. General Motors Corp.*, 298 F.Supp. 1064 (E.D.Pa.1969); *Horn v. General Motors Corp.*, 17 Cal.3d 359, 551 P.2d 398 (1976); *Roberts v. May*, 41 Colo.App. 82, 583 P.2d 305 (1978); *Ford Motor Co. v. Evancho*, 327 So.2d 201 (Fla.1976); *Friend v. General Motors Corp.*, 118 Ga.App. 763, 165 S.E.2d 734 (1968); *Buehler v. Whalen*, 70 Ill.2d 51, 15 Ill.Dec. 852, 374 N.E.2d 460 (1978); *Garst v. General Motors Corp.*, 207 Kan. 2, 484 P.2d

47 (1971); *Smith v. Ariens Co.*, 375 Mass. 620, 377 N.E.2d 954 (1978); *Elsasser v. American Motors Corp.*, 81 Mich.App. 379, 265 N.W.2d 339 (1978); *Cryts v. Ford Motor Co.*, 571 S.W.2d 683 (Mo.App.1978); *Brandenburger v. Toyota Motor Sales, U.S.A., Inc.*, 162 Mont. 506, 513 P.2d 268 (1973); *Hancock v. Paccar, Inc.*, 204 Neb. 468, 283 N.W.2d 25 (1979); *Johnson v. American Motors Corp.*, 225 N.W.2d 57 (N.D.1974); *Burkhard v. Short*, 28 Ohio App.2d 141, 275 N.E.2d 632 (1971); *McMullen v. Volkswagen*, 274 Or. 83, 545 P.2d 117 (1976); *Mickle v. Blackmon*, 252 S.C. 202, 166 S.E.2d 173 (1969); *Engberg v. Ford Motor Co.*, 87 S.D. 196, 205 N.W.2d 104 (1973); *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516 (Tenn. 1973); *Baumgardner v. American Motors Corp.*, 83 Wash.2d 751, 522 P.2d 829 (1974); *Arbet v. Gussarson*, 66 Wis.2d 551, 225 N.W.2d 431 (1975); *Chrysler Corp. v. Todorovich*, 580 P.2d 1123 (Wyo.1978).

Apparently only two jurisdictions which have considered it now fail to follow it. *McClung v. Ford Motor Co.*, 333 F.Supp. 17 (S.D.W.Va.1971), aff'd, 472 F.2d 240 (4th Cir.), *cert. denied*, 412 U.S. 940, 93 S.Ct. 2779, 37 L.Ed.2d 400 (1973); *Walton v. Chrysler Motor Co.*, 229 So.2d 568 (Miss. 1969).

In view of the fact that the discussion of *Larsen* in *Bulliner* is dictum and that Judge Ward in *Simpson* appears to have relied entirely on *Alexander* and *Bulliner*, in reality two North Carolina Federal Judges, Jones and Larkins, have clearly faced fact situations as here presented, attempted to analyze what North Carolina Courts would do, and come out with different results.

 Faced with the obvious split of authority in the Federal Courts sitting in North Carolina and the near unanimity of opinion elsewhere, I cast my vote—make my prediction of what the Courts of North Carolina would do if faced with this issue—in favor of the plaintiffs and adopt the *Larsen* doctrine. This Court is of the opinion that the reasoning behind the rule set out in *Evans* is unrealistic and would not be followed by the North Carolina Courts.

Based on its examination of the evidence in the record, the Court finds that there is a genuine issue of material fact as to whether defendant breached its duty to plaintiffs to design and manufacture its vehicles so as to reasonably protect the occupants from enhanced injuries in the event of a collision. Accordingly, the Magistrate's Recommendations are accepted.

The Motion of defendant for Judgment on the Pleadings as to the Second and Third Claims is allowed. Defendant's remaining Motions for Judgment on the Pleadings and Summary Judgment are denied.

SO ORDERED.